JOSEPH E. GRAY AND AMANDA I. GRAY, Petitioners v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Gray v. Commissioner
Docket No. 4675-76.
United States Tax Court
T.C. Memo 1978-44; 1978 Tax Ct. Memo LEXIS 478; 37 T.C.M. (CCH) 227; T.C.M. (RIA) 780044; January 30, 1978, Filed *478 John P. Collins, for the petitioners. Thomas P. Dougherty, Jr., for the respondent. FEATHERSTON
MEMORANDUM FINDINGS OF FACT AND OPINION FEATHERSTON, Judge: Respondent determined the following deficiencies in petitioners' Federal income taxes and additions to tax under section 6653(a): [1]/ Addition to Tax Year
Deficiency
Sec. 6653(a)
1971
$1,495.53
$74.78
1972
1,955.53
97.78
A concession has been made by petitioners on a separate issue, and the issues remaining for decision are as follows: 1. Whether respondent, in reconstructing petitioners' gross receipts for 1971 and 1972 under the bank deposits method, incorrectly failed to give petitioners credit for certain "proceeds from loans deposited" and "receipts from other non-business sources." 2. Whether any part of the underpayments (if such unsderpayment exist) of taxes for 1971 and 1972 was due to "negligence or intentional disregard of rules and regulations" within the meaning of section 6653(a). FINDINGS OF FACT Petitioners Joseph *479 E. Gray and Amanda I. Gray, husband and wife, were legal residents of Campton, New Hampshire, when they filed their petition. For both 1971 and 1972 petitioners filed joint Federal income tax returns. In 1969 petitioners sold a house in Wilmington, Massachusetts, in which they had lived for 15 years. Subsequently, petitioner Amanda I. Gray (Amanda) and petitioners' children moved to New Hampshire. In 1971, Amanda worked as a part-time employee of the Grafton County, New Hampshire, Sheriff's Department. During 1971 and 1972, Joseph E. Gray (Joseph) worked as a self-employed scrap metal picker at the Saugus, Massachusetts, landfill. He often stayed overnight at the landfill but frequently returned to New Hampshire to stay with his family. In late 1969 or early 1970, Joseph H. Gray (J.H.), petitioners' son, started the Plymouth Tire Company, Inc., (the company or Plymouth Tire) Plymouth, New Hampshire. J.H. was the company's president and major shareholder and had charge of its books and records. Joseph, also a shareholder, was its vice president and treasurer. Amanda, although a minor shareholder, was not a company officer. Plymouth Tire operated a garage which had all *480 of the necessary automobile tire changing, wheel alignment, and front-end work equipment. When it began operations, Plymouth Tire did not have sufficient funds to purchase this equipment, but the company's books do not show how the needed capital was obtained. The books contain no record in this respect of any indebtedness, indicating either the lender, the total amount owed or paid, the interest due, or the repayment schedule. J.H. did not sign any company notes evidencing any indebtedness incurred for acquiring such equipment. Petitioners' bank statement from Pemigewassett National Bank in New Hampshire shows a deposit of $2,155 on September 5, 1972. M. Kaplan & Co., Inc., loaned Joseph $2,000 and $600 on September 12, 1972, and November 6, 1972, respectively. On May 7, 1971, in connection with the audit of his income tax returns for the years 1965 through 1968, inclusive, respondent issued to Joseph a letter advising him that his books and records were inadequate. On examination of petitioners' income tax returns for 1971 and 1972, respondent's agents found that petitioners' books and records substantiating their income tax returns were inadequate and incomplete. *481 Employing the bank deposit method of income reconstruction, respondent determined that petitioners understated their gross receipts by $9,330.85 in 1971 and by $8,694.24 in 1972. OPINION Since petitioners failed to maintain adequate records of their income, respondent was authorized to use an indirect method of income reconstruction in redetermining their income. The bank deposit method used by respondent to reconstruct petitioners' income has long been sanctioned by this Court. ; . Under that method, though not conclusive, bank deposits are prima facie evidence of income. To show that their bank deposits were not currently taxable income, petitioners had the burden of proving that the deposits were derived from some nontaxable source. . Petitioners contend that respondent's determination was in error to the extent that it failed to give them credit for the receipt of $4,000 in both 1971 and 1972 as repayments of a loan Joseph made to Plymouth Tire to buy needed equipment. *482 They maintain that the proceeds of approximately $36,000 from the 1969 sales of their home in Wilmington, Massachusetts, and some land in New Hampshire, were kept in a safe in their home, and $20,000 was loaned from that cash hoard to Plymouth Tire in 1969 and 1970. They contend that, in both 1971 and 1972, Plymouth Tire repaid approximately $4,000 of this loan. Although petitioners have presented a plausible scenario, they have no documentation or other substantiation for any of the transactions. Petitioners contend that they sold their Wilmington home for approximately $18,000 to an unrelated purchaser and some New Hampshire property to their daughter for an additional $18,000, but they offered no evidence to corroborate their testimony to this effect. Joseph allegedly distrusted banks and on this ground seeks to explain the absence of any bank records of the receipts from those sales. In such circumstances, petitioners ordinarily would be expected to call the purchasers of the properties as witnesses to testify as to the sales, but they failed to do so. We recognize the possibility that Joseph did help J.H., his son, purchase the equipment for Plymouth Tire. However, *483 petitioners offered no concrete evidence to show the actual cost of the equipment, whether the parties expected the company to repay Joseph's outlay or whether it was intended as merely a capital contribution to Plymouth Tire, and whether and to what extent the company made repayments in 1971 and 1972. Joseph contends that he recorded the money he spent on behalf of Plymouth Tire and the repayments thereof in a small notebook. J.H. kept Plymouth Tire's books, and he admitted that those books contain no record of any repayments to Joseph in 1971 and u972.The only record kept of such repayment, he testified, was his father's small notebook. We are aware of the informal record keeping practices often employed by family-owned businesses, but such informality does not explain or excuse petitioner's failure to produce at the trial either Joseph's small notebook or any records on the purchase of the equipment. At the trial, J.H. testified that the funds used in 1971 and 1972 to repay the alleged loans to Joseph were included in Plymouth Tire's taxable income as reflected by its books and income tax returns. Yet, as noted above, those books contain no records of disbursements to Joseph. *484 J.H. was asked to explain how Plymouth Tire's books were kept in balance if $4,000 each year was included in the company's income and then withdrawn and repaid to Joseph without any trace of the repayments appearing on the books. His explanation, to say the least, was not clear. Petitioners also contend that respondent's 1972 determination was in error since it failed to give them credit for alleged loan proceeds of $2,155 received on September 5, 1972, from M. Kaplan & Co., Inc. and deposited in their Pemigewassett National Bank account. In his determination respondent allowed petitioners credits for loans of $2,000 and $600, received by Joseph on September 12, 1972, and November 6, 1972, respectively, from M. Kaplan & Co., Inc., but made no allowance for this September 5, 1972, deposit. Unfortunately, neither Robert Kaplan, the president of M. Kaplan & Co., Inc., nor any other representative of that company was called as a witness in these proceedings.The record contains nothing to corroborate Joseph's testimony that this deposit was a loan. We are not satisfied that petitioners have not confused this September 5, 1972, deposit with the M. Kaplan & Co., Inc. loans for which *485 petitioners were given credit. Because of petitioners' failure to maintain reasonably adequate records, despite the notice given them on May 7, 1971, we must held that petitioners' underpayment of tax was due to negligence or intentional disregard of rules and regulations within the meaning of section 6653(a).Petitioners have the burden of proof on this additions-to-tax issue, and they did not show that they exercised reasonable care in maintaining records of their income and expenditures or in preparing their tax returns. We are compelled to decide the issue for respondent. To reflect the above, Decision will be entered for respondent. Footnotes
1. /↩ All section references are to the Internal Revenue Code of 1954, as in effect during the tax year in issue.